# HILLSBOROUGH,

## JANUARY TERM, A. D. 1857.

---

## Bow *v.* Allenstown.

Where no charter or act of incorporation of a place can be found, its incorporation as a town may be proved by reputation, or by long user of the corporate powers of a town, without objection, or by legislative grants, necessarily implying a town corporation.

An act of incorporation, subsequently passed, does not raise any conclusive presumption that the town was not before a corporate town. It is evidence to be weighed by a jury.

Deeds and other private documents are admissible, as evidence of reputation, of the matters of general and public interest recited in them; but such deeds, and the declarations of persons deceased, are not so admissible, unless it appear that the parties were conversant with the place.

A verdict and judgment against a town, in an action for support of a pauper, though after the act of incorporation, is evidence in the same view, if founded on a settlement of an earlier date; and its effect would not be modified by evidence that the same pauper was afterwards supported by the other party to the suit.

A private act, reciting the burning of the Secretary's office, and an account of the same fire, communicated to the N. H. Historical Society's Collections by one formerly Secretary of State, are competent evidence of that historical fact, when suggested to account for the circumstance that no record of any charter can be found.

Evidence of a search without success in the Secretary's office for evidence of a charter, and that no records of charters of several towns can be found, is admissible to show the records to be incomplete. The records of the place in question are admissible, whether they show acts which a town only can do, or such as places unincorporated may also do, as showing the character in which the place assumed to act.

Places required to pay a part of the State tax, though called unincorporated, have long enjoyed many of the corporate powers of towns, but had not those powers in relation to highways, nor paupers, nor in some other cases.

Books of account of the selectmen are admissible in the same view, and whether the acts recorded were done in a legal manner or not, is not material, nor is it material that they are not certified by the town-clerk.

Venires for jurors, issued to a place as a town, are competent evidence of reputation, for towns only are authorized to draw jurors, and the return of jurors by the town officers is an assumption of the right to act as a town.

Acts of the legislature, incidentally recognizing the place as a town, are admissible as evidence of reputation, and also as evidence of the assent of the legislature to the exercise of the powers of a town.

The exercise of the corporate powers of a town, under a claim of right, for the period of twenty years, without objection, and with the knowledge and assent of the legislature, furnishes conclusive evidence of a charter which has been lost, or of a prescriptive right as a town.

Under our constitution, a grant by the legislature to a place, having less than one hundred and fifty ratable polls, to send a representative, by implication makes the place a town.

So the annexation of other territory to *the town* of A., must by implication make it a town, if it was not a town before.

ASSUMPSIT, for the support of E. Holt, a pauper, from August 27, 1847, to January 10, 1850. Plea, the general issue.

It was agreed that said Holt was a pauper, standing in need of relief, and that the supplies, as charged, had been furnished by the plaintiff, and that proper notices under the statute had been served on the defendant, according to law. It was also admitted that said Holt resided in said Allenstown for a long time prior to 1816, and for four successive years, to wit, from 1816 to 1820, he dwelt and had his home in said Allenstown, and owned and occupied real estate there, to the value of $150 and more, and paid all taxes duly assessed on him and his estate during said time, and that the plaintiff was entitled to recover in this action the amount claimed, if Allenstown was an incorporated town prior to 1816.

The defendant then introduced a copy of an act of the legislature of New-Hampshire, approved July 2, 1831, incorporating all that tract of land, situated in the county of Merrimack, known by the name of Allenstown, into a town by the name of

Allenstown. The defendant also proved that diligent search had been made among the State records, and that no evidence on record of any colonial grant or act, or any act passed by any legislature, or otherwise, constituting the town of Allenstown prior to 1831, could be found.

The defendant contended, as matter of fact, that Allenstown never was incorporated until 1831, and also requested the court to rule, as matter of law, " that the fact of the legislature having granted an act of incorporation to Allenstown in 1831, necessarily implied, and raised a presumption, conclusive in law, that said town was never incorporated prior to that time." But the court declined so to rule, but did rule that the act of incorporation of 1831 did not, by necessary implication, raise any conclusive legal presumption either one way or the other, as to a prior act of incorporation, and submitted the evidence to the jury; to which ruling the defendant excepted.

The plaintiff contended that Allenstown had been incorporated by some charter or act prior to 1815, which said charter or act had been lost or destroyed by lapse of time or accident.

To prove the existence of such charter or act, the plaintiff first introduced evidence of reputation, consisting of various ancient deeds, records and documents, and the declarations of persons formerly resident in Allenstown, now deceased, &c. Some of these deeds conveyed lands in Allenstown, describing them by giving the number of the lot and range in the division of lots in said town, and as drawn to the original right of Richard Wibird, Esq., and others. Several of these deeds were from grantors, who described themselves as being selectmen of the town of Allenstown for the year 1789, and various other years, conveying lands in said town of Allenstown, described by the number of the lot and range in the division of said town, and in accordance with a vote of said town, passed on the second Tuesday of March, &c.

The plaintiff offered in evidence a copy of a writ, verdict and judgment, in " *Pembroke* v. *Allenstown*," which judgment was recovered February term, 1834. The writ was entered September

term, 1832, and was founded on an account for the support of a pauper from June 4, 1829, to August 1, 1832, as evidence that Allenstown was an incorporated place prior to 1831. The defendant objected to this evidence, on the ground that it was of too recent a date, but the court admitted it.

To rebut this evidence, the defendant introduced various ancient deeds, records and documents, and the declarations of deceased persons, late of said Allenstown. Some of these deeds conveyed land in " a place called Allenstown;" others " in Allenstown, so called," and others " in Allen's Grant, so called."

The defendant offered in evidence on this question of reputation, an ancient deed of land in Allenstown, where both the parties lived away from Allenstown, one in Portsmouth and the other in Newmarket. There was no evidence aside from the deed that either of them had ever occupied the land, or paid taxes on it, or ever had actual possession of it, or that they had any acquaintance with, or knowledge of said Allenstown. This deed was objected to by the plaintiff, and excluded by the court.

The defendant proved that a witness, Mr. Evans, had acted as agent for Allenstown, in a suit once brought by Deerfield against said Allenstown, which cause came on for trial at a term of the court at which Judge Livermore presided. The defendant then asked the witness what Judge Livermore said about Allenstown being incorporated. Objection was made, and the court excluded the testimony.

The plaintiff then offered in evidence, as tending to prove that certain public records of the State had been lost or destroyed by fire, a copy of an act of the provincial legislature, approved April 1, 1737, for the relief of W. Hill and James Clark, which recited that a former special act had been passed in their favor, and that " in the May, 1736, and before a copy of said act was taken out of the Secretary's office, his dwelling-house was consumed by fire, and the said special act suffered the same fate." To the admission of this evidence the defendant objected, on the ground that the evidence offered was incompetent to prove the fact alleged, but the court overruled the objection and admitted it.

The plaintiff also offered to read in evidence a part of an article drawn up by Richard Bartlett, Esq., formerly Secretary of State, relating to the preservation and keeping of public archives, from the 5th volume of the N. H. Historical Society's Collections, pages 18, 22 and 23, to show the destruction and loss of the public records of the Province of New-Hampshire. The defendant objected : 1st, that the plaintiff had not shown by any proper search that any charters of towns or other public records had ever been lost ; and, 2d, that if this were shown, the book offered is not a history so well authenticated as to make it authority. But the court overruled the objections, and admitted the evidence.

The plaintiff then offered evidence to show that the Secretary of State had made diligent search among the State records, and that no charters or acts of incorporation could be found on record of the following towns in this State, to wit : East-Kingston, Exeter, Greenland, Hampton, Hampton-Falls, Kensington, New-Castle, Newington, Newmarket, Portsmouth, Rye, Stratham and Dover, as tending to show that some charters and records had been lost or destroyed. This was objected to, but admitted by the court.

The plaintiff offered in evidence the records of Allenstown from 1789 to 1831, from the town-clerk's office. The defendant objected to the reception of any evidence from the records, proving acts on the part of Allenstown which unincorporated places might do. But the plaintiff contended that he might properly show, by those records, that Allenstown had not only performed acts which an unincorporated place could not legally do, but that in all their acts, from their earliest organization down to 1831, they had assumed to act, and had acted in the capacity of a town, and these records were offered for the purpose of showing both these facts. The court admitted the records as evidence.

The plaintiff also offered in evidence a book produced and furnished by the town-clerk of Allenstown, as a portion of the records of said town in his custody, as clerk, purporting to be

a record of the sale of non-resident lands for taxes in Allenstown for the years 1822 and 1823. The defendant objected to this evidence, on the ground that it did not show any legal taxes assessed upon Allenstown, upon which such sale could lawfully be made. The court admitted the evidence, as tending to show in what capacity Allenstown undertook to act, whether their acts were legal or not.

The plaintiff also offered the books of the selectmen of Allenstown prior to 1831, to which the defendant objected, but the court admitted them. In these books the selectmen, in stating their accounts with the town, made frequent reference to particular pages of a book, referred to as the " Pauper Book," and the " School Book," for the particular items which made up the sums charged in their accounts. The plaintiff offered this " Pauper Book" and " School Book" as portions of the selectmen's records, and called Mr. Batchelder, who stated that he was first selectman of Allenstown, that this Pauper and School Book came into his hands as selectman about eighteen months ago, with other books and records of the selectmen of Allenstown ; and that he furnished them to the plaintiff's counsel under a subpœna duces tecum. The court admitted them, the defendant objecting to them as portions of the selectmen's books, because they are not verified or signed by the clerk, but are private books of the selectmen, and therefore are incompetent evidence of any acts of Allenstown, or the capacity in which she acted.

The plaintiff offered in evidence various acts of the State legislature, tending to show a recognition of Allenstown as a town by the State. The defendant objected to this testimony, on the ground that no acts of this State government can be a recognition of Allenstown as a town, unless the act in direct terms, or by necessary implication, confers the powers of a corporation ; and this is a question of law for the court and not one of fact for the jury. But the court overruled the objection, and admitted the evidence.

The plaintiff offered in evidence the acts for the apportion-

ment of public taxes, passed in 1773 and in 1777, and the "Beef Act," so called, passed in 1780, as tending to show reputation and a recognition on the part of the State; also copies of the proceedings of a convention of delegates from the several towns in the colony of New-Hampshire, holden at Exeter in April, 1775, and lists of the delegates attending the same, for the same purpose.

In these documents Allenstown was enumerated among towns without any mark of discrimination, though it appeared that other *places*, usually regarded as unincorporated, were enumerated in the same manner.    The evidence was objected to, but admitted.

The plaintiff offered evidence to show that writs of *venire facias* had been issued by the clerk of the Superior Court of Judicature, and of the court of Common Pleas, each year from 1824 to 1831, directed to the town of Allenstown, and that Allenstown had, in compliance with the requirements of said writs, drawn and returned jurors to serve at said courts.    The defendant objected to this evidence, as too recent to prove reputation, and not of a character to prove recognition, but the court admitted it.

In the course of the trial, the defendants offered to prove that the pauper, whose settlement was in question in the action, *Pembroke* v. *Allenstown*, (before referred to,) has been since the date of the judgment and still is supported as a pauper by said Pembroke.    But the court excluded the testimony.

The plaintiff offered in evidence various acts of Allenstown, *between* 1816 *and* 1831, tending to show that they had acted as a town, and had also performed acts which an unincorporated place could not legally do; and also various acts of the State government *in the same period of time*, tending to show a recognition of Allenstown as a town by the State.    To all which the defendant objected; but the court admitted the evidence, instructing the jury that they would consider this in connection with all the other similar acts of Allenstown and the State, *prior to* 1816, and find from the whole evidence whether Allenstown was incorporated prior to the act of 1831; and if they so found, then to find further as to the time of its incorporation, whether it was before or after 1816.

The court instructed the jury that an unincorporated place was liable to be taxed by the government, and when thus taxed its inhabitants had a right, by the constitution and laws of the State, to vote for State senators, and to choose selectmen, assessors and collectors, to assess and collect all taxes thus imposed upon them by the government, but that they had no power by law to impose a tax upon themselves, or to raise one dollar by any such tax upon themselves for any purpose whatever. That they could not vote to raise money to *make* highways, or to *repair* them. That they have no authority to raise money for the support of paupers, nor can an action be maintained by or against any such place. To which the defendant excepted.

The defendant asked the court to instruct the jury that unincorporated places have the right to a representation in the House of Representatives the same as towns; which the court declined to do, but did instruct them that although such unincorporated places are not entitled to such representation in the House of Representatives by virtue of the express provisions of the Constitution of the State, yet that by an act of the legislature such places might properly be classed, as they have frequently been, and authorized to send a representative, or that even a single unincorporated place might, by special act of the legislature, be authorized to send a representative; but that, without some such act of the legislature, such place would not be entitled to a representative in said House of Representatives. To all which the defendant excepted.

The court instructed the jury: 1st, to consider and find, upon all the evidence before them, whether or not Allenstown had been in fact incorporated by any charter, grant, or act of incorporation of the Provincial or State government, prior to 1816; which said charter, grant, or act has been lost or destroyed by lapse of time or by accident.

2. To consider and find whether or not Allenstown had, for twenty years prior to 1816, acted as a town, and had claimed and assumed the position of a town, and exercised and enjoyed the privileges of a town, without interruption and with the assent of the State government.

The court remarked to the jury that if they found affirmatively on the first point, their verdict would be for the plaintiff; but if they should not find that Allenstown had ever been incorporated in fact prior to 1816, on the first point, they would proceed to the second, and if they found that Allenstown had not acted as a town, &c., for twenty years prior to 1816, their verdict would be for the defendant. But if they should find affirmatively on this second point, the court would, for the purposes of this trial, hold that this furnished a conclusive presumption of a grant from the State, and order a verdict for the plaintiff.

The jury found affirmatively on both the questions submitted to them, and having returned that fact to the court, returned a general verdict for the plaintiff, which the defendant 'moved to set aside, and that a new trial may be granted for supposed error in the rulings and instructions of the court.

*Flint* and *Morrison*, for the defendant.

I. It is submitted that a legislature having all the records of the State before it, and granting a petition for the incorporation of a place into a town, for the reason that it never has been incorporated, must be held to have adjudged and settled the question against any prior incorporation.

II. The suit of Pembroke v. Allenstown was not commenced till more than a year after the incorporation of Allenstown, in 1831, and for a claim which accrued partly before and partly after said act of incorporation. The suit could be maintained equally well, whether Allenstown was or was not incorporated prior to 1831. But the question was not whether or not Allenstown was incorporated prior to 1831, but prior to 1816. Buller's N. P. 233, 234; 1 Greenl. Ev., secs. 131, 132.

III. The ancient deed was admissible as evidence of reputation, without showing further than that the parties were acquainted with the land. 1 Greenl. Ev., secs. 139, 128, 129; Bull. N. P. 233.

IV. Judge Livermore, being thoroughly conversant with the

affairs of the State, his sayings would seem to be quite as competent upon a question of reputation, as any evidence offered by the plaintiff. 1 Greenl. Ev. 129.

V. The act for the relief of Hill and Clark was a private act, as to third persons not directly affected by it. The recital of facts therein is not, as we think, competent evidence. 1 Greenl. Ev., secs. 480, 481.

VI. It was not competent to show the burning of the Secretary's house, without showing first that the charter in question was in the house, and so liable to be burned therein. The act does not show that either acts or charters were kept in his house.

VII. Proof that no charters could be found of Exeter, Hampton, Portsmouth, &c., had no tendency to show that a charter had or had not been granted to Allenstown, or that such a charter, if granted, had or had not been lost. 1 Greenl. Ev., sec. 52; *Holcomb* v. *Herson*, 2 Cowper 391; *Viney* v. *Barss*, 1 Esp. 293; *Furneaux* v. *Hutchins*, Cowper 807.

VIII. Records and other evidence, venires, &c., arising after 1816, were not competent to show Allenstown incorporated before 1816. *New-Boston* v. *Dunbarton*, 12 N. H. 409; 15 N. H. 201; 1 Greenl. Ev., sec. 52, and same authorities cited under last paragraph.

IX. The books of the selectmen and collector, the "Pauper Book" and "School Book" were not town books, were not kept by the town-clerk, but were private books, and not competent against the town.

X. The "Beef Act," and proceedings of delegates at Exeter in 1775, were incompetent. The latter was a revolutionary meeting, and the signatures not proved. The early proportion acts and the Beef Act contained special powers to hold meetings, &c.

XI. If evidence of a suit to recover for the support of a pauper was competent upon the question of reputation, why was it not competent to rebut that evidence, by showing that Allenstown never supported this pauper, or acknowledged any liability to do so, but that Pembroke had always supported this pauper and still did.

XII. In compelling a place to pay State taxes and to elect officers, &c., there is conferred, incidentally and necessarily, in order to be able to effect these purposes, the power to assess and collect a tax to defray the attendant expenses, to provide a place to meet in, pay the officers, and other incidental expenses. Laws 1805, p. 203, 204 and 205; Laws of 1792, p. 31, 33, 34, 163, 177, 287, 325, 321, 278; Laws 1805, p. 295, 296, 297.

XIII. An unincorporated place cannot, by any acts of its own, acquire corporate rights, or subject its inhabitants to corporate liabilities. *New-Boston* v. *Dunbarton*, 15 N. H. 201; 12 N. H. 409; *Wallace* v. *Fletcher*, 10 Foster 434.

*W. H. Bartlett* and *D. Clark*, for the plaintiff.

I. At common law, corporations may exist by prescription. Com. Dig., Franchise, A; 1 F. 2 and 4, and Day's Notes; Co. Litt. 250, a; 114, 6; *Case of Sutton's Hospital*, 10 Co. 29, 6; Kyd. Corp. 41; Angell and A. Corp. 56; 2 Kent. Com. 276; *Carlisle* v. *Blamire*, 8 East 487; *King* v. *Stratford*, 14 East 360; *Carpenters' Co.* v. *Hayward*, Doug. 373. And prescriptions exist here. *Simpson* v. *Coe*, 4 N. H. 301; *Perley* v. *Langley*, 7 N. H. 236; *Knowles* v. *Daw*, 2 Foster 409. There is no reason why this doctrine of the common law is inappropriate to our circumstances. On the contrary, the origin of our town policy and the history of our State have furnished peculiar reasons for its adoption. And it is held that corporations may exist by prescription in this country. A. & A. on Corp. 56, 7; 2 Kent. Com. 277; *Green* v. *Dennis*, 6 Conn. 302, 3; *Woods* v. *Banks*, 14 N. H. 110. Towns may exist by prescription; *Dillingham* v. *Snow*, 3 Mass. 277; *Stetson* v. *Kempton*, 13 Mass. 278. The time of legal memory for the proof of prescriptions is twenty years in this State. *Wallace* v. *Fletcher*, 10 Foster 435; *Miller* v. *Garlock*, 8 Barb. 153; *Stein* v. *Burden*, 24 Ala. 454; (15 U. S. D. 454.) Records may be presumed, if their existence is necessary to establish a right. 10 Johns. 380; *Crooker* v. *Pendleton*, 10 Shep. 341; *Reed* v. *Rookman*, 3 D. & E. 158; *Goodtitle* v. *Baldwin*, 11 East 480.

Bow *v*. Allenstown.

The ruling that the act of 1831 was not conclusive against a previous incorporation, was correct. *King* v. *Stratford,* 14 East 360 ; Co. Litt. 214, 6 ; *Paul* v. *Perez,* 7 Texas 338 ; (14 U. S. D. 333, 30 ;) The legislature are only to declare what the law shall be. *Alden* v. *Blockledge,* 2 Cra. 272 ; *Ashley's Case,* 4 Pick. 23. It is not unusual to recharter towns.

II. The question in this case was so far one of general interest, that reputation was admissible. 4 Cow. & Hill. Phill. Ev. 232, 238 ; 1 Greenl. Ev., secs. 128, 9, 137, 145. A. & A. Corp. 58, 9 ; *Dillingham* v. *Snow,* 5 Mass. 547 ; *Duke of New-Castle* v. *Broxtowe,* 4 B. & A. 273 ; *Reg.* v. *Bedford,* 29 L. & E. 89 ; *Wicks* v. *Sparhawk,* 7 M. & S. 679.

Verdicts are admissible as evidence of reputation ; 1 Greenl. Ev., secs. 139, 555 ; 1 Phil. Ev. 251, 3 ; 1 Stark. Ev. 297 ; *Reed* v. *Jackson,* 1 East 357 ; *Bogardus* v. *Trin. Ch'h,* 4 Sandf. 63 ; (11 U. S. D. 208 ;) even though rendered *post litem motam.* 1 Greenl. Ev., sec. 139. It is said the verdict only tended to prove an incorporation in 1831, yet it is evidence of a prior incorporation. The account extended from June 24, 1829, to 1832. The settlement must have been acquired previously. Though it did not prove an incorporation before 1816, it rebutted the assumption that the town was not incorporated till 1831.

The declarations of persons not having competent knowledge are inadmissible. 1 Greenl. Ev., secs. 145, 128–9 ; Phill. Ev. 255, *et seq.* ; 2 B. & A. 245.

The fact of the loss of the public records is an ancient matter of public history, affecting the whole people. It could, therefore, be proved by reputation. A recital of a private act is evidence of this. *Reg.* v. *Haughton,* 18 L. & E. 294. If it were not, Allenstown cannot be injured by it, since the same fact is recited in the public statute, 26 Geo. 2, Prov. Laws 175, which the courts are bound to notice. *Lane* v. *Harris,* 16 Geo. 217 ; 15 U. S. D. 249, 170 ; *Forsaith* v. *Clark,* 1 Foster 417. This recital shows that the records were in the Secretary's house, and that many public papers were burned in it. The Historical Collections were properly introduced. 1 Greenl. Ev. 497. It

is from a responsible source, has been long published and frequently cited, as in 1 Foster 407.

III. It is said the evidence that charters of other towns cannot be found in the archives of the State, was inadmissible, because it had no tendency to prove that there had ever been a charter of Allenstown, or that it had been lost. The facts shown proved that the records in the Secretary's office are not complete. It was competent, in connection with other evidence, to show the loss of the charter, to justify the introduction of evidence of a secondary kind. The defendants proved that no charter could be found to disprove an incorporation before 1831, and could show a deficiency in the records and the loss of some of them, to rebut any presumption from that fact. *Wiggin* v. *Plumer*, 11 Foster 268, 270.

IV. The particular acts of the Legislature specified were competent in themselves, and as parts of the long series of acts introduced, and as evidence of reputation. It was not necessary they should contain an express recognition. An incidental mention, or a recital, 14 East 350, 364, may be a recognition, admissible as reputation, as evidence tending to prove a prescription, as showing the knowledge and assent of the government to the claim of Allenstown to be regarded as a town. It was immaterial whether Allenstown was a town, a parish with town privileges, or a district.

V. The town books were properly received. They were all from the proper custody. *Marshall* v. *Railroad*, 16 How. 314. That they were kept among the records of the town makes them evidence. 1 Greenl. Ev., sec. 198. These books form a connected series, and are competent as evidence of reputation, and as admissions. The selectmen were agents of the town, and their books were admissions, and as such competent. *Boston* v. *Wyman*, 4 Cush. 342. They were admissible to show in what capacity Allenstown was claiming to act. A vote, recognizing the town as incorporated, would be evidence, and a vote implying the same thing, as the choice of tything-man, highway surveyors, &c., must be equally evidence. If they styled them-

selves a town, it showed their claim. 1 Greenl. Ev., sec. 196 ; *Comins* v. *Comins*, 21 Conn. 413 ; (13 U. S. Dig. 304).

That the venires were incompetent to show a recognition of the town as such, goes to their weight, not to their competency. They were competent as admissions by the town that they were incorporated before 1831, to rebut the case of the defendants. If they were not a town they could not return jurors. Laws 1815, p. 119, 121, 225.

The fact that the pauper was supported by Pembroke was incompetent. It was not rebutting. It did not tend to show there was no such verdict, nor that it was wrong, nor that Allenstown was not incorporated.

VI. The instructions as to the power of unincorporated places to raise money by taxation were unexceptionable. The power is entirely statutory. 3 N. H. 498 ; 13 Mass. 278. The charge follows the opinion of C. J. *Richardson* in *Hillsborough* v. *Deering*.

VII. The instructions upon the question of representation were too favorable to the defendants. An unincorporated place cannot send a representative to the legislature, under the constitution. The power is confined to towns. Const. 1783 ; Laws, Ed. of 1789, p. 17, 19, 20 ; Const. 1792 ; Laws of 1830, p. 8, 10 ; *Hillsborough* v. *Deering*, 4 N. H. 91, 2.

When rights are given by statute to a body, which cannot be enjoyed without corporate powers, such bodies are to be deemed, by necessary implication, so far corporate. *Stebbins* v. *Jennings*, 10 Pick. 188 ; *N. Hempstead* v. *Hempstead*, 2 Wend. 109 ; *Denton* v. *Jackson*, 2 Johns. C. 325 ; *Boyd* v. *Bath*, 1 Ired. 194 ; (4 U. S. D. 422, 20.)

To be entitled to representation it was necessary to be a town, and what constituted a town was settled by law ; and the moment a place was made a town, the law cast upon it all the duties of a town. The resolve allowing Allenstown a representative had this effect. Allenstown was a party, described by name as a town ; a body of definite limits. Without the grant of the powers of a town, the grant had no effect. They sent a representative ;

the act of 1811 was consequently either an incorporation, or a recognition of an existing right, or a violation of the Constitution. A similar inference may be drawn from the act relative to the lands of Buntin and others.

BELL, J.* It has been settled by the decisions of the Superior Court in the case of *New-Boston* v. *Dunbarton,* 12 N. H. 409, and 15 N. H. 201, that in a case where no charter or act of incorporation of a town can be found, it may be proved to be a town by reputation, or it may be shown to have claimed and exercised the powers of a town, with the knowledge and assent of the legislature, and without objection or interruption, for so long a period as to furnish evidence of a prescriptive right.

All the evidence which may properly bear upon the second of these points, is also evidence proper to be weighed under the first.

The case was tried by the court and by the counsel upon these assumptions, and the questions we are now called to decide relate to the admissibility and effect of certain parts of the evidence offered, and to the propriety of the instructions given by the court to the jury.

I. It was held that the act of 1831 did not raise any conclusive presumption that the town was not before incorporated, but that it was evidence to be weighed by the jury. It is contended that it was conclusive evidence that the town was never before incorporated.

Presumptions of fact are inferences from evidence, and they may be resisted by evidence leading to an opposite conclusion. As matters of fact they are to be submitted to a jury. This is not the point raised here. Legal presumptions are artificial rules, established by the law, upon considerations of public policy or public convenience, against which no evidence is received. We have not been referred to any work of the law, where the presumption contended for here is recognized, and we are aware

* PERLEY, C. J., and FOWLER, J., having been counsel, do not sit.

of none. There is nothing in the history of local corporations to justify the presumption. Towns in England were ordinarily incorporated by royal charters, and in disturbed times they often solicited new charters to avoid the risks of forfeitures. If a corporation by accident or neglect became disorganized, it could be restored only by a new charter, and some of the kings are charged with extorting money from corporations by compelling them to take new charters, for which they were obliged to pay large fees and heavy fines. 8 Hume's Eng. 132 ; 1 Macaulay's Eng., ch. 2 ; 12 Lingard's Eng. 341. It is a settled principle that a new charter does not extinguish old privileges. *Hadduck's Case*, T. Ray 439 ; Vent. 355 ; 6 Vin. Ab. 267, 283 ; and Corp., I. 3 ; *Reg.* v. *Ipswich*, 2 Ld. Raymond, 1239 ; Com. Dig., Franchise, F, 9 ; which could not be true, if the presumption insisted upon was admitted. The case of *The King* v. *Stratford* is a direct authority against this position. 14 East 360.

II. The deeds offered on the one side and the other were competent evidence, though of no great weight. The principle upon which oral declarations are admitted in matters of general and public interest, as a means of proving traditionary reputation, applies to documentary and all other kinds of proof denominated hearsay. If the matter in controversy is ancient, and not susceptible of better evidence, any proof in the nature of traditionary declarations is receivable, whether it be oral or written, subject to the proper qualifications. Thus deeds, leases and other private documents have been admitted as declaratory of the public matters recited in them. 1 Greenl. Ev., sec. 139 ; 1 Phill. Ev. 249. Such evidence was received without objection in *New-Boston* v. *Dunbarton*, 15 N. H. 201, before cited ; *Adams* v. *Stanyan*, 4 Foster 405. The deeds introduced to prove as well as to disprove the fact of incorporation, were of persons heretofore resident in Allenstown. One which was offered, of land in that town, but excluded between parties residing at a distance, was rejected. It was properly excluded. In subjects interesting to a comparatively small portion of the community, as a city or a parish, a foundation for admitting evidence of

reputation, or the declarations of ancient and deceased persons, must first be laid by showing that from their situation they probably were conversant with the matter of which they were speaking. 1 Greenl. Ev., sec. 136 ; 1 Phill. Ev. 255.

Upon this principle the evidence of what was said by Judge *Livermore*, who is not shown to have been conversant either with the place or the affairs of Allenstown, was properly rejected.

The verdict and judgment in *Pembroke* v. *Allenstown* was admitted as evidence of reputation, though it was objected that the suit was commenced a year after Allenstown was incorporated by statute, in 1831, and for a claim accrued partly before and partly after the act of incorporation. It would of course have been objected to for that cause, if the recovery had been upon a claim arising after the incorporation alone. We must, therefore, assume that the recovery appeared to be for a cause arising before that date. The question involved must have been a settlement acquired by at least four years' residence before the first charge. It had no tendency to prove an incorporation before 1816, which the plaintiffs were bound to establish, but was admissible to rebut the position taken by the defendants, that the town was not incorporated till 1831. The circumstance that the verdict was *post litem motam*, does not affect its admissibility, is the rule laid down by 1 Greenl. Ev., sec. 139, for which he cites many authorities.

The fact that Pembroke subsequently maintained the same pauper for whose support a recovery was had in that action, had no tendency to rebut the effect of the verdict as evidence of reputation of the corporate and town character of Allenstown.

Evidence showing that no charter or incorporation of Allenstown as a town could be found in the State records, being introduced, it was competent for the plaintiff to show that the records were not so complete that it could be inferred that there had never been any such charter or incorporation. As tending to show this, evidence that the house of the Secretary of the Province was burned in 1736, and many public records and papers destroyed, was properly admissible. The copy of the private

act reciting these facts, which are to be established as matters of history of public and general interest, seems to have been properly admitted.  It cannot be presumed that the legislature would have passed an act containing a false recital as to such a matter.  The history of the same fire, given in the 5th N. H. Historical Society's Collections, by the late Richard Bartlett, Esq., former Secretary of State, is entitled to as high credit as any history.  Mr. Bartlett was well known as an able lawyer, and a gentleman of high personal character.  The article in question bears striking evidence of the diligence and care which were habitual to him.  It is admissible on the ground of reputation. The fact of the burning of the Secretary's house and of a part of the public records is recited in the public statute, 26 Geo. 2., Prov. Stat., 1771, p. 175 ; of which the court may properly take notice *ex officio*.

The evidence of the search for charters of other towns was admissible also, to show the records incomplete.  And it is not material that in some instances other explanations of the fact may be given than the loss of the records.  Dover, Exeter, Hampton and Portsmouth were doubtless incorporated or recognized as towns, during the period when the government of New-Hampshire, in the time of the great rebellion in England, was usurped by Massachusetts.  Others were probably incorporated as districts and parishes, and have been made towns by the operation of general laws conferring the character of towns on such districts or parishes.

The records of Allenstown were all admissible, whether they tended to show such acts as a town alone could do, or such acts as an unincorporated place might equally do.  The mere fact that acts were done which any unincorporated place might rightfully do, would have no tendency to prove the place a town, but the manner of doing them must generally carry evidence that they were done in the character of a town, or otherwise.  The material question is whether the people of the place assumed to act in the character of a town, and their records must almost necessarily have a distinct bearing, either negatively or affirmatively, upon this point.

The book containing the taxes and accounts, though not prop-
erly a town record, was yet a public book, containing entries
made by the officers of the place, of their doings as such, and
the same remark applies to the *school-book* and *pauper-book.*
They were of the character of declarations, or admissions, of
the place itself; made by its officers in the course of their
business, and almost necessarily giving character to the action of
the people, as claiming to be a town, or a place not incorporated.

Taxes for State and County purposes might be rightfully as-
sessed in unincorporated places under general laws passed as
early as 1789; Laws 1789, p. 211; and for the support of schools
after 1808. Laws 1815, p. 38. But at no time for highways
or paupers, according to the decision in *Hillsborough* v. *Deering,*
4 N. H. 86. Whether the action of the place or its officers was
legal or not, as to the method of proceeding, is not material to
the inquiry, since the inference is equally strong as to the char-
acter in which they assumed to act, whether they proceeded
legally or otherwise. If the people in their meetings voted to
raise taxes for purposes for which unincorporated places could
not raise money, as for the building of highways and the sup-
port of paupers, and the proper officers proceeded to assess,
collect and appropriate such taxes, it is evidence that they
claimed to exercise the peculiar powers of a town, though the
proceedings might not be conformable to law. Though not con-
clusive, it would be evidence to be weighed by a jury.

That they are not certified by the town-clerk is not material.
They are not records requiring his attestation. They are origi-
nal minutes of the acts done by the officers of the place, in the
course of their official duties, and of the nature of admissions of
the place by its officers. The same facts might be shown with-
out any books, by the testimony of any person to whom they
were known.

Considered as the written statements of persons conversant
with the place and its affairs, they were admissible as evidence
of reputation.

The character of the acts of the legislature offered in evidence

is somewhat various. The acts of the Convention of 1775 being of a revolutionary character, ought not to be of much weight; but these, and the acts of the legislature which speak of Allenstown incidentally, as if it were a town, may be properly weighed by the jury, as evidence of the general impression of the community at those times that Allenstown was a town. They may stand on the same ground as the deeds to which we have before referred, and as the *venires* for jurors. The latter are without weight as a recognition, because the courts cannot confer corporate power. They may, however, take judicial notice of towns, as the public bodies from which jurors are to be drawn, and to whose officers their writs for jurors are to be sent. It is not suggested that unincorporated places before the Revised Statutes were authorized to draw jurors, and we are aware of no statute which gave them that authority. That they were required by the courts to return jurors, is evidence that Allenstown was reputed to be a town. And it is evidence that the place assumed to act as a town, that jurors were drawn and returned to the courts.

The acts of the legislature, incidentally recognizing the town of Allenstown as a town, are evidence of their knowledge of the claim and of their acquiescence in the assumption, if it was such, of the corporate powers of a town, which it would be necessary to show, together with the continued exercise of such powers for the period of twenty years, either to establish their title to be a town by prescription, or to authorize the jury to presume the existence and loss of a town charter.

Besides the statutes to which we have referred, we find among the documents put in evidence in this case, two acts of the legislature, which are not simply evidence of recognition, or of the reputation of Allenstown as a town. The first is a joint resolution of the legislature, passed June 21, 1811, upon the petition of the selectmen of Allenstown, signed also by a majority of the voters, praying the legislature " to empower *said town* of Allenstown to elect a representative." This resolution provides that " the *town of Allenstown* have leave to send a representative to

the general court of this State till the legislature shall otherwise order."

In the case of *New-Boston* v. *Dunbarton*, 12 N. H. 409, it was held that evidence that Allenstown had been *classed* for the choice of a representative, is not a fact of a character to be submitted to the jury on which to find an act of incorporation, inasmuch as unincorporated places are usually classed for that purpose. By the Constitution, the power to elect representatives without classification is confined to towns. By section 9 of Part Second, " every town, parish, or place with town privileges, (those of the last being in effect towns, and now by law declared to be such; acts of 1792 and since,) having one hundred and fifty ratable male polls, of twenty-one years of age and upwards, may elect one representative," &c.

By section 10, " such towns, parishes or places, (omitting all reference to town privileges,) as have less than one hundred and fifty ratable polls, shall be classed by the general court for the purpose of choosing a representative."

It then proceeds, sec. 11, " whenever any *town, parish,* or *place with town privileges,* as aforesaid, shall not have one hundred and fifty ratable polls, and be so situated as to render the classing thereof with any other town, parish or place, very inconvenient, the general court may, upon application of a majority of the voters in such town, parish or place, issue a writ for their selecting and sending a representative to the general court."

The power of electing a representative under a resolution of the general court is here expressly limited to towns, and places with town privileges, which are really towns. No others were capable of acting under such an authority.

The second is an act passed June 22, 1815, entitled an act for disannexing lands owned by Robert Buntin, &c., from the town of Bow, and annexing them to the *town of Allenstown.* This act recites a petition to annex the lands to the *town* of *Allenstown,* and provides that the land, &c., be disannexed from the town of Bow, and is annexed to and made part of said *town*

*of Allenstown,* as fully and amply as though contained in, &c., the original *grant, charter* or *incorporation* of said Allenstown.

It cannot be questioned that no particular form of words is ever required to constitute a corporation. It was so expressly held in the case of *Sutton's Hospital,* 10 Co. 30, and is so laid down in Kyd on Corp. 62 ; 2 Kent's Com. 27 ; 1 Rolles' Abr., Corp., F. 1.

Wherever it is apparent that the intention of the legislature will be defeated if certain parties are not found to possess corporate powers, they will be held to be created a corporation. Dyer 100, a, p. 70 ; *Russell* v. *Men of Devon,* 2 D. and E. 672 ; *Stebbins* v. *Jennings,* 10 Pick. 183 ; *North-Hempstead* v. *Hempstead,* 2 Wendell 109. In the last case it is said that it had been decided in *Jackson* v. *Corly,* 8 Johns. 385, that the people of Otsego county could not take by a grant, because they are not a corporation ; and in *Hornbeck* v. *Westbrook,* 9 Johns. 73, that the town of Rochester could not take, for the same reason ; yet if those grants had been made by the State, the grant itself would have conferred a corporate character. And the like principle was held, that the grant of the State gives to the grantee a capacity to take land, when otherwise incapable, as in the case of the heir of an Indian, *Goodall* v. *Jackson,* 20 Johns. 706 ; of a foreigner, *Jackson* v. *Etz,* 5 Cowen 314 ; and of a slave, *Jackson* v. *Lervey,* 5 Cowen 397. In *State* v. *Fourth N. H. Turnpike,* 15 N. H. 162, it was held that if acts of the legislature recognized the subsequent and continued existence of a corporation, such recognition will be a waiver of any forfeiture previously incurred ; and the same doctrine was held in *People* v. *Manhattan Co.,* 9 Wendell 382, and by *Cowen,* J., in *People* v. *Kingston Turnpike,* 23 Wendell 193.

It is on this principle that it has always been held in England that a writ of summons to a commoner to attend the house of lords, if acted upon, makes the party a peer, because none but peers can hold a seat in that body. 3 An. Dig. 157, &c. ; and a charter or statute granting a right to elect representatives in parliament makes the place a borough.

And it is on this principle, so far as we can discover, that the grantees of common lands in this State under royal or legislative grants, have always acted as corporate bodies, and been recognized as such.

It must be taken, we think, that the legislature, by their resolution of 1811, intended to recognize Allenstown as a place entitled to all the powers of a town, and to confer them upon it, if it had them not already ; and there seems no reason to doubt that by the act of 1815 the legislature intended to annex the lands described to the *town* of Allenstown, to a town and not to an unincorporated place. This act is therefore not only a recognition of Allenstown as a town, but it must be construed to confer the powers of a town in future, if it had not been before incorporated.

These acts being regarded by us as conclusive of the fact in controversy, most of the questions raised in the case are rendered immaterial.

The charge of the court as to the right to send a representative, was, upon the views we have stated, sufficiently favorable to the defendant, and not open to any exception by them. So the instructions relative to the mode of considering the evidence relative to the acts of Allenstown, and of the State, was suitable and proper. A. & A. on Corp. 57, 58.

The charge of the court as to the powers of unincorporated ˌplaces seems entirely correct. By statutes passed in 1789, 1791, and afterward, certain corporate powers were conferred on what were then and still are called unincorporated places. An extended examination of the statutes, by the aid of the counsel, shows that the places called unincorporated had all the powers of towns, as to State and county taxes, as to schools, as to elections of State and county officers, except representatives, and of members of Congress ; as to the choice of selectmen, assessors, and town-clerk, collectors, fence-viewers, and measurers of wood, and as to perambulations, and that their officers had the powers of the like officers in towns as to licenses, strays, the small-pox, fences, bounties, attachments, records of deaths, &c.,

and as to the taxation of non-residents' lands, and such places were subject to extents like towns ; while they had not the powers of towns as to highways, nor, by the decision in *Hillsborough* v. *Deering*, as to paupers, nor as to jurors, tything-men, mills, pounds, floating timber, watchmen, sealers of weights and measures, fire-wards, nor as to arms for soldiers, nor as to representatives.

The condition and powers of these so called unincorporated places, have been gradually approximating to those of towns, so that under the Revised Statutes, which provide, chap. 1, sec. 4, that the word " *town*" may be construed to extend and be applied to any place incorporated, or the inhabitants of which are required to pay any tax, it may well be doubted if any substantial difference now exists between them.

The question between New-Boston and Dunbarton, which related to a settlement gained before 1796, was very materially different from that presented in this case, which relates to a settlement commenced in 1816.

The charge that the unquestioned user of the franchise of a town for twenty years without interruption, and with the assent of the government, furnished a conclusive presumption of a grant from the State, is in accordance with repeated decisions of our courts. *Watkins* v. *Peck*, 13 N. H. 360 ; *Wallace* v. *Fletcher*, 10 Foster 434, and others ; 2 Greenl. Ev., sec. 539.

In *Wallace* v. *Fletcher* it was held that though in England a prescription must have existed beyond time of legal memory, yet here, by analogy to the statute of limitations, an uninterrupted user of an incorporated hereditament, under a claim of right, for twenty years, as between parties under no disability, with the knowledge and without interruption of those adversely interested, affords conclusive evidence of a grant or a right, as the case may be. Such user and enjoyment may be used as proof of a deed or record, which has been lost by time or accident, or of a prescriptive right, which always presupposes a grant. Such a title may be well called a prescription, agreeably to the ancient use of that term, though it depends upon a period of

twenty years, and has no connection with the time of legal or actual memory. *Dare* v. *Heathcote*, 36 E. L. & E. 564.

The rulings of the court below being sustained, there must be

*Judgment on the verdict.*

